### IN THE

# SUPREME COURT OF THE STATE OF GEORGIA,

# AT AUGUSTA,

## JUNE TERM, 1854.

Present—JOSEPH H. LUMPKIN, ⎫
   EBENEZER STARNES, ⎬ Judges.
   HENRY L. BENNING. ⎭

---

No. 58.—LUKE DUNN, plaintiff in error, *vs.* THE STATE OF GEORGIA, defendant.

[1.] The crime of trading with slaves, is not such an offence against the person or property of the citizen, as can be privately settled by the mere act of the parties, according to the provisions of the Statute of 1850.

Indictment for trading with a slave, in Richmond Superior Court. Tried before Judge HOLT, January Term, 1854.

The only question in this cause was, whether an indictment for trading with a slave, was such a case as could be settled under the Act of 1850, without the consent of the prosecuting officer of the State. The Court below held, that it was not such a case, and this decision is assigned as error.

JNO. K. JACKSON, for plaintiff in error.

Attorney-General SHEWMAKE, for the State.

*By the Court.*—LUMPKIN, J., delivering the opinion.

[1.] The Act of 1850 declares, that "from and after its passage, it shall and may be lawful, in all criminal offences against the person or property of the citizen, not punishable by fine and imprisonment, or by a more severe penalty, for the offender to settle the case with the prosecutor, upon the consent of the injured party · being′ · obtained, at any time before verdict". ·(*Cobb's Digest*, 814.)

We are unanimous in holding, that the offence for which Mr. Dunn was prosecuted, is not embraced within the provisions of this Act; and that the Circuit Court was right, in deciding that it could not be settled by the mere act of the parties.

My brethren think that the Act of 1850 should be interpreted *alone*, in the light of the 4th and 6th divisions of the Penal Code; and that if the offence is not, technically, one ·either against the person or property of the citizen, as therein enumerated, that it is not, of course, covered by the Statute; and that the crime of trading with′ slaves, not falling within either of these divisions, it could only be settled by the ·consent of the Court.

While I vote for affirming the judgment of the Court below, ʼI cannot concur, entirely, in this view of the Act of 1850. It certainly has the recommendation of being definite and intelligible. I must be pardoned, however, for doubting whether this rule be in accordance with the true intent and meaning of the law. And for myself, I have adopted it as a maxim of universal jurisprudence, and as applicable to the interpretation ·of all instruments, as well as to the construction of all laws, ·that wherever the design of the framer can be indisputably as·certained, it shall prevail.

Now, I suppose that the Legislature intended, by this Act, ʼto permit all criminal cases of a minor nature, and more immediately, if not exclusively, effecting the person and property of the individual injured, to be adjusted, provided the party

Dunn *vs*. The State.

aggrieved was satisfied—such as assaults and batteries, the unjustifiable whipping of slaves, &c. Most of these, it is true, are embraced in the 4th and 6th divisions of the Code. But then, there are others which are not. Much the larger portion of the various kinds of malicious mischief—such, for instance, as maiming cattle, cutting down and injuring shade and fruit trees in yards, gardens and orchards, are offences effecting exclusively the individual citizen. And yet, according to the construction adopted by my brethren, these could not be settled, because they fall within neither the 4th nor 6th division of the Code.

My idea is, that the Act of 1850 takes a wider scope; and that it is not restricted, literally, to the several offences against the person or property specified in these divisions, but that it applies to all minor offences against either the person or property of the citizen, although not so christened in the sub-divisions of the Code, which was a mere artificial arrangement, and intended for convenience merely, and was never designed to describe, with technical accuracy, what were and what were not offences against the person or property of individuals.

And then, again, on the other hand, I apprehend, that there are crimes against the person or property—and which would not be excluded from the operation of the Act of 1850, on account of the nature of their punishment—which, nevertheless, are excluded, because, while they effect the individual, are, at the same time, peculiarly prejudicial to the public police. And for that reason, they cannot be settled privately.

I maintain, that the offence of illegally trading with slaves, is of this character, although not designated as an offence against property, in the 6th division of the Code. It cannot be privately settled, not because it is not an offence against person or property, but because the community have too deep a stake in suppressing this evil. It is made the duty of the Judges of the Superior Courts, at the commencement of every term, to give in charge to the Grand Jury, the substance of the Act against trading with slaves. While the actual owner is damaged by corrupting his slave, every inhabitant in the

neighborhood is made to suffer, by the stimulation given by this traffic, to acts of pilfering and plunder.

In one class of cases, the public wrong is merged in that of the individual, and compensation to him, is accepted as the adequate measure of redress. In the other, the individual grievance is swallowed up in the greater wrong done to society; and nothing but public punishment will suffice, to vindicate the violated law.